CITY OF WEST ALLIS, Village of Greendale, Village of Bayside and City of Oak Creek, Petitioners,

v.

Honorable Patrick T. SHEEDY, Chief Judge, First Judicial District, Respondent.

Supreme Court

*No. 96–3579–OA. Oral argument May 29, 1997.—Decided June 20, 1997.*

(Also reported in 564 N.W.2d 708.)

For the petitioners, there was a brief by *Michael J. Sachen* and *Scott E. Post*, West Allis and oral argument by *Scott E. Post*.

For the respondent, the cause was argued by *James H. McDermott*, assistant attorney general, with whom on the brief was *James E. Doyle*, attorney general.

¶ 1.   WILLIAM A. BABLITCH, J.   In this original action, the Cities of West Allis and Oak Creek, and the Villages of Greendale and Bayside (West Allis) ask

this court to determine whether the Honorable Patrick T. Sheedy, Chief Judge, First Judicial District of Milwaukee County, exceeded statutory authority when he issued Directive 96–14 (the Directive). The Directive provides that when a municipal court case is transferred because of a substitution of judge, the case is prosecuted by, and fines and forfeitures which result from the action stay with, the municipality in which the new judge sits. Judge Sheedy contends that he issued the Directive pursuant to the exercise of his administrative duties and powers as stated in SCR 70.20 and SCR 70.19(3), and under the authority of Wis. Stat. § 800.05(3) (1995–96). While we commend Judge Sheedy's continuing efforts to responsibly administer his duties, we conclude that the Directive exceeds his statutory authority. Accordingly, we declare the Directive invalid.

¶ 2.   The undisputed facts are as follows: On May 3, 1996, Judge Sheedy issued Directive 96–14 which provides:

> IT IS HEREBY ORDERED that, effective May 3, 1996, when a case is transferred on a substitution/disqualification, the receiving court treats the case as if it had originated there and the sending court has nothing more to do with it. The forfeiture and court costs stay with the receiving court and its prosecutor prosecutes.

¶ 3.   In July of 1996, West Allis commenced an action in Milwaukee County Circuit Court challenging this directive. Judge Lee Wells accepted jurisdiction of the case, but urged West Allis to seek relief in this court. In February of 1997, we granted West Allis' petition for leave to commence an original action.

¶ 4. At the threshold, Judge Sheedy contends that West Allis cannot challenge the Directive. Relying upon this court's opinion in *Marshfield v. Cameron*, 24 Wis. 2d 56, 127 N.W.2d 809 (1964), Judge Sheedy argues that it is the well-established law of Wisconsin that " '[m]unicipal corporations, being creatures of the state, are not permitted to censor or supervise the activities of their creator.' " Respondent's brief at 23 (quoting *Marshfield*, 24 Wis. 2d at 63. Judge Sheedy incorrectly applies *Marshfield* to this case. While Judge Sheedy correctly states the general rule of state immunity, there is a critical exception to that rule:

> A general exception to the rule of state immunity for agencies or arms of the state, however, is that courts may entertain suits to enjoin state officers and state agencies from acting beyond their constitutional or jurisdictional authority. These suits are permitted because they are suits against individuals acting in excess of their authority.

*Kenosha v. State*, 35 Wis. 2d 317, 323–24, 151 N.W.2d 36 (1967) (citation omitted). If Judge Sheedy acted in excess of his statutory authority, then his action was not an act of the state because the state had not granted him the authority to so act. *See Berlowitz v. Roach*, 252 Wis. 61, 65, 30 N.W.2d 256 (1947).

¶ 5. West Allis' challenge falls within this exception. West Allis is not arguing that the statute upon which Judge Sheedy based the Directive is unconstitutional. Rather, West Allis argues that the statute does not authorize the issuance of the Directive and, therefore, Judge Sheedy exceeded his statutorily granted authority when he issued the Directive. This it may challenge.

¶ 6.   Concluding that West Allis has standing to raise the issue, we turn our attention to whether Judge Sheedy had the authority to issue Directive 96–14. More specifically, we consider whether, by directing that "the forfeiture and court costs stay with the receiving court and its prosecutor prosecutes," Judge Sheedy exceeded the authority granted to him by the legislature and by this court.

██

¶ 7.   The issue requires us to interpret a Supreme Court Rule and a statute to determine whether they confer the authority to issue the Directive on the Chief Judge. Rule interpretation and statutory interpretation present questions of law which this court reviews *de novo*. *Jadair Inc. v. United States Fire Ins. Co.*, 209 Wis. 2d 187, 562 N.W.2d 401, 404 (1997). The goal of rule interpretation, like that of statutory interpretation is to give effect to the intent of the enacting body.

¶ 8.   Judge Sheedy contends that the legislature conferred the power to issue the Directive on the court by Wis. Stat. § 800.05(3), and this court accorded the duty and the authority to administer the provisions of the statute to the chief judge in SCR 70.20 and SCR 70.19(3). He finds further support for the Directive in the Municipal Judges Manual.

¶ 9.   The issue is whether Judge Sheedy exceeded his statutory authority by issuing the Directive.

██

¶ 10.   Judge Sheedy was acting pursuant to his administrative powers as chief judge pursuant to SCR 70.19(3) and SCR 70.20. Although there are significant differences between administrative agencies and the chief judge, in this case, the rules governing administrative agency rulemaking are helpful. The general rule is that an administrative agency has only those

powers as are expressly conferred upon it or which may be fairly implied from the statutes under which it operates, and as a consequence, it cannot promulgate any rule which is not expressly or impliedly authorized by the legislature. *Brown County*, 103 Wis. 2d at 48.

¶ 11.   Supreme Court Rule 70.19 states that one of the chief judge's duties is the establishment of "a system for the equitable distribution and allocation of categories of cases and case loads within the district, subject to the approval of the supreme court." Supreme Court Rule 70.20 provides the chief judge with the authority to carry out this duty:

> The chief judge shall exercise within the judicial administrative district the full administrative power of the judicial branch of government subject to the administrative control of the supreme court. The chief judge may order that his or her directives, policies and rules be carried out.

SCR 70.20. This rule gives the chief judge broad administrative powers. Thus, if Wis. Stat. § 800.05(3) authorizes the Directive, Judge Sheedy acted within the authority granted to him, as chief judge, by this court.

¶ 12.   Wisconsin Statute § 800.05(3) authorizes the court to transfer a case from one municipality to another when a case is reassigned to a different judge. Section § 800.05(3) provides:

**800.05   Substitution of municipal judge.**

. . .

(3)   In municipal court, upon receipt of the written request, the original judge shall have no

further jurisdiction in the case except as provided in sub. (1) and except to determine if the request was made timely and in proper form. If no determination is made within 7 days, the court shall refer the matter to the chief judge for the determination and reassignment of the action as necessary. If the request is determined to be proper, the case shall be transferred as provided in s. 751.03(2). Upon transfer, the municipal judge shall transmit to the appropriate court all the papers in the action and *the action shall proceed as if it had been commenced in that court.*

Wis. Stat. § 800.05(3) (emphasis added).

¶ 13. Judge Sheedy contends that Wis. Stat. § 800.05(3) authorizes the Directive. Specifically, he relies on the last sentence in § 800.05(3). He reasons that if the transferred case had been commenced in the receiving court, the case would have been commenced by the municipality which serves the receiving court. He further explains that the receiving municipality would act through its municipal attorney, and that any fines or forfeitures resulting from judgment would go into the coffers of the receiving municipality.

¶ 14. While Judge Sheedy's interpretation of Wis. Stat. § 800.05(3) may fairly be drawn from the statute, we conclude it was not the legislature's intent to so provide.

¶ 15. To interpret Wis. Stat. § 800.05 in the manner in which Judge Sheedy suggests would be to deny municipalities participation in their own lawsuits—lawsuits that interpret and enforce their own ordinances. Under Judge Sheedy's interpretation, whenever a judge is substituted in a case, the municipality that commenced the action, though remaining a party in the action, would, in effect, be appointed an attorney—the prosecuting attorney of the municipality

in which the substitute judge sits. This would occur despite the municipality's ability to choose and pay for its own attorney. Furthermore, fines and forfeitures resulting from the violation of the party municipality's ordinances would go into the coffers of the municipality in which the substitute judge sits - not into the coffers of the municipality where the violation occurred.

¶ 16.  In sum, the interpretation Judge Sheedy asks us to give to Wis. Stat. § 800.05(3) would not allow the party municipality to choose its own attorney for the prosecution of its ordinances, and if those ordinances were found to have been violated, would not allow the party municipality to retain the fines and forfeitures resulting from the violations. This cannot be the result intended by the legislature. If the legislature had intended § 800.05(3) to deprive a party municipality of its own attorney, to allow another municipality to prosecute an ordinance which it may or may not have an interest in prosecuting, and to deprive a party municipality of the revenues derived from ordinance violations occurring in the municipality, it would have clearly stated such an intent. It did not. These are not insignificant effects. Therefore, we conclude that § 800.05(3) does not authorize the Directive.[1] Accordingly, we declare that the Directive was issued without authority.

*By the Court.*—Rights declared.

---

[1] Because Wis. Stat. § 800.05(3) does not authorize the Directive, it is of no consequence that the Municipal Judges Manual suggests the procedures required by the Directive.