Noah FILPPULA-MCARTHUR, a minor, by his Guardian ad Litem, Janet S. Angus and Lori McArthur, Plaintiffs-Appellants,

James T. BALL, Appellant,†

v.

Thomas HALLOIN, M.D., Bellin Memorial Hospital, Wisconsin Patients Compensation Fund, The Medical Protective Company, St. Paul Fire and Marine Insurance Company, Physicians Insurance of Wisconsin and Green Bay Area Public Schools, Defendants-Respondents.

Court of Appeals

*No. 99–0895. Submitted on briefs February 9, 2000.—Decided March 7, 2000.*

## 2000 WI App 79

(Also reported in 610 N.W.2d 201.)

†Petition to review granted.

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Thomas C. Koessl* of Chicago, Illinois.

On behalf of the defendants-respondents, the cause was submitted on the brief of *James R. Cutglass* and *Sharon R. Long* of *Cutglass, Erickson & Bonville, S.C.* of Milwaukee.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. CANE, C.J. Attorney James Ball and his clients, Noah Filppula-McArthur, a minor, by his guardian ad litem, Janet S. Angus, and Lori McArthur, appeal from an order assessing costs against Ball and revoking his *pro hac vice* admission. The McArthurs additionally appeal from the trial court's denial of their motions to reconsider various evidentiary rulings and its order that all rulings on motions in limine would apply to the subsequent trial. Because Ball's conduct evinced an unwillingness to comply with the court's

orders, we conclude that the trial court did not misuse its discretion when it revoked Ball's *pro hac vice* admission. Further, because Ball's conduct resulted in a mistrial, the trial court did not misuse its discretion when it assessed costs against Ball. Regarding the evidentiary issues, we conclude that to address these rulings at this time would be premature. Accordingly, we affirm the order.

### BACKGROUND

¶ 2. This case arises from a medical malpractice claim alleging that Dr. Thomas Halloin was negligent in his care and treatment of Lori McArthur during the labor and delivery of her son, Noah, and that the negligence resulted in permanent injuries to Noah. In August 1997, Ball, a nonresident attorney, petitioned the trial court for *pro hac vice* admission to represent Lori and Noah in their medical malpractice action. The trial court granted Ball's petition in September.

¶ 3. In November, the trial court set various deadlines for completion of discovery, including the disclosure and deposition of expert witnesses. The scheduling order required the McArthurs' experts to be disclosed by April 1, 1998, and deposed by June 1. Halloin's experts were to be disclosed by July 1 and deposed by September 1. All discovery was to be completed by October 1. The McArthurs timely disclosed their expert witnesses on March 31. They subsequently sought to depose Dr. Christopher Inglese, one of Noah's treating physicians, after the October 1 deadline had passed. Consequently, the trial court, in accordance with its November 1997 scheduling order, granted Halloin's motion to quash the notice of Inglese's deposition. Inglese, who had not been disclosed as an expert wit-

ness, remained categorized as a "treating physician," prohibited from testifying on liability issues.

¶ 4. The parties moved to trial in November 1998. During opening statements, Ball told the jury:

> Now, throughout Noah's follow-up course, several people have cared for him. Dr. Karen Camille of Green Bay, Wisconsin. Dr. Camille, the evidence will show, has cared for Noah, has treated seizures and has formed an opinion as a board-certified pediatrician that Noah's problems today are hypoxic ischemic encephalopathy damage caused during the last few hours of his labor and delivery.
>
> . . . .
>
> Dr. Chris Inglese . . . will testify that Noah's problems are due to hypoxic ischemic encephalopathy.

Defense counsel subsequently requested a conference outside the presence of the jury to clarify the parameters of Inglese's testimony before he took the witness stand.[1] Clarifying that Inglese was allowed to testify as a treating physician, not an expert witness, the trial court stated that Inglese was "not entitled to express an opinion regarding the liability issues, the causation issues or the damage issues." The court added, "[h]e's here to offer testimony regarding his treatment, and his treatment obviously would include his diagnosis."

---

[1] Defense counsel explained:

[W]hat I don't want to have happen is the doctor gets on the witness stand and then we have to object and make it look like the doctor's got opinions but they can't be given for some reason and the jury drawing some inference about him being improperly muzzled to some extent, and I want to make sure that we don't have that happen because it would be very prejudicial if, in fact, the ruling is that he's not going to be allowed to testify on damages, causation or negligence.

The court later again clarified that Inglese had "not been disclosed as an expert who's going to establish liability, cause or damages."

¶ 5. After further discussion and voir dire of the witness, the court stated:

> We have visited this in detail regarding the pretrial of this matter and the motions that were made. This doctor can testify as to his diagnosis, his prognosis. He cannot testify as to the ultimate issues in this case being liability, cause, or damages. It's that simple.
>
> . . . .
>
> To the extent that his etiological diagnosis does not address any of those three issues, he can testify, but based on what he has indicated in voir dire, his etiological diagnosis directly affects one of . . . those issues, and he can't testify to that.

To Inglese, the court explained: "I'm indicating that you can give whatever testimony you have to give in this case without reference to the ultimate facts because of the nature by which you were disclosed as a witness. And it's that simple." Thereafter, in response to Ball's continued attempts to argue his case, the court responded:

> Will counsel cease from arguing? This court has made its ruling. This Court's ruling is consistent with the discussions that we had in chambers, at both pretrials. It's consistent with what I've heard here today from this physician. And that is this Court's ruling. You can elicit whatever information you wish to in the presence of the jury from this witness consistent with that ruling.

¶ 6. Shortly thereafter, Inglese took the stand and the following exchanges occurred. Ball first asked:

"Did Dr. Camilli express to you her diagnosis as to why or when Noah was brain damaged?" The trial court sustained defense counsel's objection to the form of the question. Ball later asked: "Were you able to rule out causes for his injury?" Again, defense counsel's objection was sustained. Later, the following exchange occurred:

> [Ball]: I think you indicated that you ruled out genetics as a cause for his problems; is that correct?
>
> [Inglese]: Correct.
>
> [Ball]: Were you also able to rule out the metabolic cause?
>
> [Inglese]: We investigated that thoroughly. We found no explanation.
>
> [Ball]: Were you also able to rule out infection?

At this point, defense counsel requested a sidebar. The question was withdrawn and the examination of Inglese continued. The next day, the trial court granted Halloin's motion for a mistrial.

¶ 7. On January 25, 1999, the court heard numerous motions and ultimately revoked Ball's *pro hac vice* admission, assessed costs against him and denied various motions to reconsider certain evidentiary rulings. The court additionally ordered, in relevant part, that: (1) all prior orders, including, but not limited to the scheduling order, remain in effect; (2) all rulings on motions in limine would continue in effect; and (3) in all respects, the retrial would be conducted under the identical terms and conditions in effect when the initial trial commenced. The order further stated:

This case will be tried at a time convenient to the parties under exactly the same rules and conditions and rulings that were in effect at the time of the pretrial, reserving to both parties the right to raise whatever subsequent requests they have as they would deal with evidence or any other matters to come before the Court.

This appeal followed.

## ANALYSIS

### A. Revocation of Ball's *Pro Hac Vice* Admission

¶ 8. Although Ball does not contest the trial court's discretionary authority to grant *pro hac vice* admission to a nonresident attorney, he questions whether the decision to revoke a nonresident attorney's *pro hac vice* admission is left to the sound discretion of the trial court. We conclude that it is. SUPREME COURT RULE 10.03(4) (1998) provides in pertinent part:

> A judge in this state may allow a nonresident counsel to appear in his or her court and participate in a particular action or proceeding in association with an active member of the state bar of Wisconsin who appears and participates in the action or proceeding. *Permission to the nonresident lawyer may be withdrawn by the judge granting it if the lawyer by his or her conduct manifests* incompetency to represent a client in a Wisconsin court or by *his or her unwillingness to abide by the rules of professional conduct for attorneys and the rules of decorum of the court*. (Emphasis added.)

¶ 9. The plain language of SCR 10.03(4) gives the trial court the power to grant or withdraw a nonresident attorney's *pro hac vice* admission. *See State v.*

*Lehman,* 137 Wis. 2d 65, 82, 403 N.W.2d 438 (1987) (the purpose of SCR 10.03(4) was not to limit the discretionary *pro hac vice* authority of the courts to appoint counsel not licensed to practice law in Wisconsin); *see also State v. Mosley,* 201 Wis. 2d 36, 547 N.W.2d 806 (Ct. App. 1996). In *Mosley,* a defendant's request for out-of-state counsel was granted. *See id.* at 42–43. After his conviction, the defendant appealed, arguing in relevant part that the trial court misused its discretion by initially permitting the representation. *See id.* at 45. Alternatively, the defendant contended that the trial court misused its discretion by not removing the nonresident attorney from the case. *See id.* at 48. Consistent with SCR 10.03(4), this court held that the trial court did not "misuse its discretion" by either granting the defendant's request to be represented by out-of-state counsel or allowing counsel to continue representing the defendant. *See id.* at 49. We therefore conclude that the power to grant or withdraw a nonresident attorney's *pro hac vice* admission is left to the sound discretion of the trial court.

¶ 10. We will sustain a discretionary act if the trial court has applied the proper law to the established facts and there is any reasonable basis for the trial court's ruling. *See State v. Alsteen,* 108 Wis. 2d 723, 727, 324 N.W.2d 426 (1982).

¶ 11. Here, the trial court, after reviewing the relevant portion of the trial transcript, granted a mistrial based on Ball's repeated failure to comply with the court's orders regarding the parameters of Inglese's testimony and its consequential effect on the jury. The court further concluded that there was no way to cure the damage that had been done. The trial court's order granting the mistrial is not challenged on appeal.

¶ 12. At the subsequent motion hearing, when the trial court revoked Ball's *pro hac vice* admission, it explained:

> Mr. Ball, your *pro hac vice* standing before this Court is a privilege extended to you by this Court. You are not a member of the Wisconsin Bar. You're not licensed to practice here. That right comes from our Supreme Court. You are not a possessor of that right. Under your standing, which, I repeat, is a privilege, it is my responsibility to ensure professional conduct and compliance with the rules in this courtroom.
>
> . . . .
>
> . . . What concerns me is your unwillingness to abide by the rules of this Court, your insistence on revisiting ad nauseam virtually every decision that this Court renders, your apparent unfamiliarity or disregard for the procedural rules of this jurisdiction, and your continued failure to heed the admonitions from this Court regarding your conduct.
>
> All of that, sir, has resulted in a mistrial. It has placed your client's cause in . . . potential jeopardy. I . . . will not . . . permit that to continue, nor will I permit it to reoccur. You have abused your privilege before this court. I therefore revoke that privilege.

¶ 13. Based on Ball's blatant failure to abide by the trial court's orders, the court reasonably concluded that Ball's conduct manifested an unwillingness to abide by the rules of professional conduct for attorneys. Under the rules of professional conduct, a lawyer shall not "knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists." SCR 20:3.4(c) (1998). Such unwillingness is a proper basis upon

255

which a trial court, in its discretion, may withdraw a nonresident attorney's *pro hac vice* admission. *See* SCR 10.03(4) (1998).

¶ 14. We conclude that the trial court could have found additional evidence of Ball's unwillingness to abide by its rules, given his conduct in dealing with other matters before the trial court. *See Stan's Lumber v. Fleming*, 196 Wis. 2d 554, 573, 538 N.W.2d 849 (Ct. App. 1995) (we may independently review the record to determine whether additional reasons exist to support the court's exercise of discretion). Initially, despite the clear mandates of the scheduling order, Ball attempted to name additional expert witnesses after the time for doing so had expired. Ball referred to these additional witnesses as "rebuttal experts," although the scheduling order did not provide for "rebuttal experts." Rather, the order provided that plaintiffs were to disclose their experts' identities by April 1, 1998.

¶ 15. Further, in August, the trial court ordered counsel to timely exchange information regarding the contemplated date and order of presentation of witnesses. By letter dated October 9, Ball wrote to defense counsel:

> Now that you have obtained His Honor's order that you start putting on your case on the afternoon of Wednesday, November 11, there is no need for you to know the order of my witnesses. Frankly, it is virtually impossible for me to tell what the order will be, since I don't know the questions that you will be asking on cross and I won't know which experts will have to go when. I also won't know when non-expert treating persons will be able to attend.

Defense counsel consequently moved the court to compel Ball's compliance with the August order, and the trial court subsequently ordered compliance. Finally, during Ball's opening argument to the jury, the trial court was forced to interrupt Ball four separate times to remind him to simply present his case and make his arguments later.

¶ 16. Ball nevertheless makes various public policy arguments in support of his appeal.[2] This court, however, will search for reasons to sustain a trial court's discretionary determination. *See Steinbach v. Gustafson*, 177 Wis. 2d 178, 185–86, 502 N.W.2d 156 (Ct. App. 1993). An appellate court must not exercise the trial court's discretion. *See Barrera v. State*, 99 Wis. 2d 269, 282, 298 N.W.2d 820 (1980). We recognize

---

[2] Ball stresses the need to weigh his clients' "right to chosen counsel" against the trial court's authority to manage its calendar and enforce its orders. He also argues that the trial court's revocation of his *pro hac vice* admission creates a higher standard of professional conduct for nonresident attorneys than for resident attorneys. Finally, relying on cases from foreign jurisdictions, Ball intimates that only egregious conduct may support the revocation of a nonresident attorney's *pro hac vice* admission.

To the extent Ball's arguments have any merit, the principal and controlling factor, nevertheless, is that Ball is not licensed to practice in this state and did so only by virtue of SCR 10.03(4). His clients do not enjoy the absolute right to be represented by an attorney who has not been admitted to the Wisconsin bar. Further, the privilege to practice in this state *pro hac vice* may be conditioned on the reasonable, indeed minimal and necessary requirements SCR 10.03(4) imposes on visiting attorneys. Finally, while other jurisdictions may require egregious conduct before revoking *pro hac vice* status, nothing in SCR 10.03(4) suggests such a requirement.

that a trial court, in an exercise of its discretion, may reasonably reach a conclusion that another judge or another court may not reach, but it must be a decision that a reasonable judge or court could arrive at by the consideration of the relevant law, the facts, and a process of logical reasoning. *See Hartung v. Hartung*, 102 Wis. 2d 58, 66, 306 N.W.2d 16 (1981). Ball's public policy arguments do not provide a basis to overturn the trial court's valid exercise of discretion. Because Ball's conduct evinced an unwillingness to comply with the court's orders, we conclude that the trial court did not misuse its discretion when it revoked Ball's *pro hac vice* admission.

B. Costs

¶ 17. Ball further contends that because his conduct "pales in comparison to other Wisconsin cases where costs were imposed as a sanction," the trial court misused its discretion when it assessed costs against him. We disagree. A trial court's "discretionary authority to impose costs enables [the court] to penalize conduct disruptive to the administration of justice." *Schultz v. Darlington Mut. Ins. Co.*, 181 Wis. 2d 646, 656, 511 N.W.2d 879 (1994). In *Schultz*, our supreme court recognized that under WIS. STAT. § 814.036,[3] "circuit courts have the authority to impose costs on an attorney whose actions have resulted in a mistrial." *Id.* Here, the mistrial was declared as a direct result of Ball's unwillingness to obey the court's orders with

---

[3] WISCONSIN STAT. § 814.036 (1993–94), the omnibus costs provision, provided that: "If a situation arises in which the allowance of costs is not covered by ss. 814.01 to 814.035, the allowance shall be in the discretion of the court."

respect to Inglese's testimony and the potential ramifications of his conduct on the jury. Accordingly, we conclude that the trial court reasonably exercised its discretion when it assessed costs against Ball, especially when the mistrial itself is not challenged on appeal.

## C. Evidentiary Issues

¶ 18. The McArthurs contend that the trial court erred by denying various motions to reconsider evidentiary rulings and ordering that all rulings on motions in limine be applied to the subsequent trial. Specifically, they argue the trial court erred by: (1) barring treating physicians from giving expert testimony on ultimate issues; (2) barring certain rebuttal experts from testifying; (3) allowing counsel for Halloin to recite from authoritative texts without laying the proper foundation; (4) barring one of their experts from testifying regarding genetic screening procedures at sperm banks; and (5) quashing their subpoena for redacted medical records of another of Halloin's patients. We, however, decline to address these rulings at this time.

¶ 19. Although we indicated that these pretrial orders served as a basis for granting the McArthurs' petition for leave to appeal, upon review of the record, we conclude that to review these matters at this juncture would be premature.[4] First, there will be a new

[4] We have some concern about the trial court's expressed intention to preserve its evidentiary rulings for the next trial. However, because the question of whether a trial court may, effectively, lock in its evidentiary rulings for a subsequent trial was not raised in the briefs, we express no opinion on this issue.

trial with new counsel. Therefore, we do not know the extent to which counsel will attempt to present the same evidence. Further, WIS. STAT. § 901.03 provides, in pertinent part, that "[e]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected . . . ." Without the benefit of a complete trial, we are unable to ascertain whether an allegedly erroneous evidentiary ruling has prejudiced the party or conversely, resulted in harmless error. We therefore refrain from addressing the merits of the evidentiary rulings at this time because to do so would be both premature and purely advisory.

*By the Court.*—Order affirmed.