Noah FILPPULA-MCARTHUR, a minor, by his Guardian ad Litem, Janet S. Angus and Lori McArthur, Plaintiffs-Appellants,

James T. BALL, Appellant-Petitioner,

v.

Thomas HALLOIN, M.D., Bellin Memorial Hospital, Wisconsin Patients Compensation Fund, The Medical Protective Company, St. Paul Fire and Marine Insurance Company, Physicians Insurance of Wisconsin and Green Bay Area Public Schools, Defendants-Respondents.

Pamela R. OBEY and Tara Cribb, a minor by her Guardian ad Litem, Janet S. Angus, Plaintiffs-Appellants,

James T. BALL, Appellant-Petitioner,

v.

Thomas J. HALLOIN, M.D., Thomas J. Gallagher, M.D., Medical Center Ob-Gyn Associates, Wisconsin Patients Compensation Fund and Wisconsin Physician Services, Defendants-Respondents,

UNKNOWN INSURANCE COMPANY "ABC", Unknown Insurance Company "DEF" and Unknown Insurance Company "HIJ", Defendants.

Supreme Court

*Nos. 99–0895, 99–1103. Oral argument November 29, 2000.—Decided February 13, 2001.*

110

2001 WI 8

(Also reported in 622 N.W.2d 436.)

For the appellant-petitioner there were briefs by *Daniel W. Hildebrand, Joseph A. Ranney* and *DeWitt Ross & Stevens S.C.*, Madison, and oral argument by *Daniel W. Hildebrand.*

For the defendants-respondents there was a brief by *James R. Gutglass, Sharon R. Long* and *Gutglass, Erickson & Bonville, S.C.*, Milwaukee, and *Steven J. Caulum* and *Bell, Gierhart & Moore, S.C.*, Madison, and oral argument by *James R. Gutglass* and *Robert McCracken.*

¶ 1. ANN WALSH BRADLEY, J. The petitioner, Attorney James T. Ball (Ball), seeks review in these consolidated actions of two published court of appeals decisions, each affirming an order revoking his admission to appear pro hac vice before a branch of the Brown County Circuit Court.[1] Ball also seeks review of an order assessing costs and fees against him. The court of appeals concluded that the circuit court did not erroneously exercise its discretion in revoking Ball's pro hac vice admission in either case and also determined that the assessment of costs and fees was not an erroneous exercise of discretion.[2] We agree and accordingly affirm both decisions of the court of appeals.

I

¶ 2. The issues presented arise from two separate medical malpractice actions consolidated for our review. Attorney Ball, who is not licensed to practice law in Wisconsin, represented the plaintiffs in both cases. In each case, the circuit court admitted Ball to practice before the court pro hac vice,[3] but subse-

---

[1] *Filppula-McArthur v. Halloin*, 2000 WI App 79, 234 Wis. 2d 245, 610 N.W.2d 201 (affirming the order of the Circuit Court for Brown County, John D. McKay, Judge); *Obey v. Halloin*, 2000 WI App 99, 235 Wis. 2d 118, 612 N.W.2d 361 (affirming the order of the Circuit Court for Brown County, William M. Atkinson, Judge).

[2] After the court of appeals' affirmance of the circuit court's orders in both cases, the plaintiffs sought leave to proceed in the circuit court under new counsel. This court granted such leave. Thus, Attorney Ball is the only petitioner before this court in both cases.

[3] The term "pro hac vice" describes the temporary permission granted to counsel who has not been admitted to practice in a particular jurisdiction to appear before the courts of that juris-

quently revoked that privilege. We begin by explaining the facts and procedural history of the two cases in turn.

## Filppula-McArthur v. Halloin

¶ 3. Plaintiffs, Noah Filppula-McArthur, a minor, and his mother, Lori McArthur, brought this medical malpractice action against several health care providers and insurers, including Thomas Halloin, M.D., the obstetrician-gynecologist who delivered Noah. The plaintiffs alleged that Noah suffered brain damage as a consequence of Dr. Halloin's negligence at the time of Noah's delivery.

¶ 4. The complaint was filed in Brown County Circuit Court in June 1997, and the case was assigned to Judge John D. McKay. Noah's interests were represented by his guardian ad litem, Wisconsin attorney Janet Angus. Soon after filing the complaint, Attorney Angus moved to have Attorney Ball appear pro hac vice. Upon an affidavit of Attorney Ball, in which he stated that he was in good standing with the Illinois bar and desirous of representing the plaintiffs, Judge McKay admitted him to appear pro hac vice in Septem-

diction for the purpose of participating in a particular case. *Black's Law Dictionary* 1227 (7th ed. 1999). In Wisconsin, pro hac vice admission and revocation are controlled by Supreme Court Rule 10.03(4) (1998). The practice has existed in Wisconsin since the nineteenth century. *See In re Mosness*, 39 Wis. 509, 510 (1876). However, only relatively recently has this court used the term to describe Wisconsin's practice. *See State v. Lehman*, 137 Wis. 2d 65, 81, 403 N.W.2d 438 (1987).

All subsequent references to the Supreme Court Rules are to the 1998 version.

ber 1997. Thereafter Ball assumed the role of plaintiffs' lead counsel in the case.[4]

¶ 5. The record demonstrates several instances of Attorney Ball's failure to comply with Judge McKay's orders during the discovery and pre-trial phases of the litigation. In these instances Ball's compliance was achieved only by court orders issued after defense motions to compel.

¶ 6. Of relevance here is Judge McKay's scheduling order which required plaintiffs' expert witnesses to be identified by April 1, 1998 and deposed by June 1. The order also required discovery to be complete by October 1, with the start of trial scheduled for November 2. However, Ball noticed the deposition of Christopher Inglese, M.D., one of Noah's treating physicians, to be conducted six days before the scheduled start of trial. Dr. Inglese was retained as a treating physician and not as an expert witness.

¶ 7. The defendants moved to quash the notice of deposition of Dr. Inglese arguing that the scheduling order did not allow for depositions to be conducted after October 1. The circuit court agreed and issued an order that reiterated that the scheduling order was still in force and disallowed the Inglese deposition.[5]

---

[4] Judge McKay later admitted Illinois attorney Ann Herbert, a member of Ball's firm, pro hac vice.

[5] Ball also named two experts to be brought in rebuttal and noticed their depositions for late October. These included a deposition in California to be conducted twelve days before trial and another in Chicago to be conducted three days before trial. The circuit court disallowed these depositions following a defense motion to strike. The defendants argued that the scheduling order did not contemplate rebuttal experts, and the circuit court reaffirmed the scheduling order. The circuit court also denied Ball's oral motion to amend the scheduling order to allow for

¶ 8. In addition to reinforcing the scheduling order, the court ordered Ball's compliance with an August 1998 order to provide defense counsel with a contemplated order of witnesses to be presented at trial. Ball had failed to comply with that order as late as October, explaining to defendants' counsel that because the defendants knew when their case-in-chief would begin "there is no need for you to know the order of my witnesses." Upon a defense motion to compel, the court ordered Ball to promptly provide "opposing counsel with specificity, and in good faith, the contemplated order of presentation of witnesses."

¶ 9. The ensuing trial began as scheduled on November 2. On the first day of trial, Attorney Ball's conduct led the court, in Judge McKay's words, to "admonish" Ball on several occasions. During Ball's opening statement to the jury, Judge McKay sustained numerous defense objections relating to the argumentative nature of Ball's statement and also admonished Ball sua sponte at several points. The court denied a motion for mistrial brought by the defendants following Ball's opening statement, but expressed its concern that the statement was "almost pure argument" in contravention of the court's orders.

¶ 10. Although Attorney Ball and his clients avoided a mistrial on day one, his conduct on the third day of trial brought what was expected to be a three-week trial to an end through a mistrial. The mistrial arose from Attorney Ball's questioning of Dr. Christopher Inglese.

¶ 11. During his opening statement, Ball stated that Dr. Inglese would "testify that Noah's problems

rebuttal experts and a subsequent motion for reconsideration brought by Ball. Following the mistrial Ball again moved for reconsideration of the ruling on rebuttal experts.

are due to hypoxic ishchemic encephalopathy." Concerned that Attorney Ball would attempt to elicit expert testimony regarding the ultimate issues in the case from Dr. Inglese, defense counsel brought the matter to the court's attention outside of the presence of the jury before the witness took the stand. Statements by the court and counsel reveal that Dr. Inglese's testimony was the subject of at least one pretrial discussion.

¶ 12. Attorney Ball explained to the court that Dr. Inglese was not testifying as an expert. Rather, he was testifying as a treating physician:

> ATTY. BALL: I can say that we have not retained Dr. Inglese as an expert. We haven't provided him with anything. He's going to testify as to his treatment and his conclusions and his diagnosis now.

The court clarified the allowable bounds of such a witness's testimony:

> THE COURT: All right. And to that extent then, he's not entitled to express an opinion regarding the liability issues, the causation issues or the damage issues. He's here to offer testimony regarding his treatment, and his treatment obviously would include his diagnosis.

¶ 13. After Attorney Ball made it clear that Dr. Inglese might testify to the cause of Noah's condition while explaining his diagnoses, the court allowed defense counsel to voir dire the witness. Dr. Inglese explained that he had two diagnoses: an anatomic diagnosis and an etiological diagnosis. The witness understood that testimony relating to the etiology, *i.e.*, cause, of Noah's condition was to be avoided:

DR. INGLESE: If what you'd like me to do is I can avoid talking about etiology.

DEFENSE COUNSEL: That would be fine, and you would be comfortable in doing that and sticking to whatever treatment you rendered and the diagnoses that you had.

ATTY. BALL: I'm not comfortable in doing that, Your Honor. I want to ask him his etiologic diagnosis.

THE COURT: Well, his etiological diagnosis, Mr. Ball, goes to the very question that is being objected to here.

ATTY. BALL: That doesn't—

THE COURT: He's not been disclosed as an expert who's going to establish liability, cause or damages.

¶ 14. After several rounds of questioning of the witness and argument by counsel, the following exchange occurred:

THE COURT: Mr. Ball, I've seen this. We have visited this in detail regarding the pretrial of this matter and the motions that were made. This doctor can testify as to his diagnosis, his prognosis. He cannot testify as to the ultimate issues in this case being liability, cause, or damages. It's that simple.

ATTY. BALL: So he can testify as to his etiologic diagnosis only?

DEFENSE COUNSEL: No.

ATTY. BALL: That's what he just said.

THE COURT: He cannot testify as to the ultimate issues in this case; that being liability, cause and damages.

ATTY. BALL: Understood.

121

THE COURT: To the extent that his etiological diagnosis does not address any of those three issues, he can testify, but based on what he has indicated in voir dire, his etiological diagnosis directly affects one of—at least one of those issues, and he can't testify to that.

¶ 15. In subsequent argument Attorney Ball attempted to persuade the court to allow him to treat Dr. Inglese as an expert, even suggesting postponement of his testimony so as to provide defense counsel with opportunity to depose the witness. The court maintained its original position on the permissible scope of Dr. Inglese's testimony.

¶ 16. Dr. Inglese then took the stand before the jury. During the course of direct examination, Attorney Ball proceeded to ask a number of prohibited questions relating to the cause of Noah's injuries. The first two questions regarding cause faced objections that were sustained. Near the end of his direct examination, Ball asked the following series of questions:

ATTY. BALL: I think you indicated that you ruled out genetics as a cause for his problems, is that correct?

DR. INGLESE: Correct.

ATTY. BALL: Were you also able to rule out the metabolic cause?

DR. INGLESE: We investigated that thoroughly. We found no explanation.

ATTY. BALL: Were you also able to rule out infection?

¶ 17. At this point defense counsel objected and a sidebar was held. Ball withdrew the last question. At

122

the conclusion of Dr. Inglese's testimony, the defense moved for a mistrial.

¶ 18. The following day, after hearing arguments of counsel recounting the events of the Inglese testimony, the court granted a mistrial. The court explained that the questions eliciting testimony from Dr. Inglese relating to cause were in violation of the court's order. The court noted that Attorney Ball's questions as to cause came after at least three sidebars and the two occasions on which the court defined the parameters of Dr. Inglese's testimony. In the court's opinion, Ball's questioning rendered the case "beyond salvaging."

¶ 19. Two months later the court heard the many post-mistrial motions brought by both sides. Attorney Ball sought reconsideration of substantially every ruling made by the court during the course of the trial. The defendants moved for revocation of Attorney Ball's pro hac vice status and for an assessment of costs and fees against him for his conduct leading to the mistrial. In response, the court assessed against Attorney Ball, personally, costs and reasonable attorney's fees, incurred as a result of the mistrial.

¶ 20. The circuit court then revoked Attorney Ball's pro hac vice status. In doing so Judge McKay explained that Ball's pro hac vice standing was a privilege extended by authority of the supreme court and that the circuit court bears the "responsibility to ensure professional conduct and compliance with the rules of this courtroom." Judge McKay explained the grounds for revocation as follows:

> What concerns me is your unwillingness to abide by the rules of this Court, your insistence on revisiting ad nauseaum virtually every decision that this Court renders, your apparent unfamiliarity or dis-

regard for the procedural rules of this jurisdiction, and your continued failure to heed the admonitions from this Court regarding your conduct.

All of that, sir, has resulted in a mistrial. It has placed your client's cause in. . .potential jeopardy. I cannot—more importantly, I will not—permit that to continue, nor will I permit it to reoccur. You have abused your privilege before this Court. I therefore revoke that privilege.

¶ 21. Attorney Ball and his clients subsequently appealed the revocation of his pro hac vice status and the assessment of costs. The court of appeals affirmed, concluding that the circuit court properly exercised its discretion in revoking Ball's pro hac vice admission and in assessing costs against him. *Filppula-McArthur v. Halloin*, 2000 WI App 79, ¶¶ 13, 17, 234 Wis. 2d 245, 610 N.W.2d 201. The court of appeals found that the circuit court reasonably concluded that Ball's "blatant failure" to follow the court's orders evinced an unwillingness to abide by the rules of professional conduct for attorneys, and thus was a valid basis for revocation of pro hac vice under SCR 10.03(4). *Id.* at ¶ 13.

### Obey v. Halloin

¶ 22. The second action is in many ways similar to *Filppula-McArthur*. It too was a medical malpractice action brought in Brown County Circuit Court by a mother and child against certain medical providers, including Dr. Halloin. Attorney Janet Angus, who again represented the interests of the minor-plaintiff as guardian ad litem, began the action in December 1997. This case was assigned to Judge William Atkinson.

¶ 23. In September 1998, Attorney Angus moved to have Attorney Ball admitted pro hac vice, and upon

that motion and an affidavit of Ball, Judge Atkinson granted that request. Ball then assumed an active role in the litigation.

¶ 24. Several months later, Attorney Ball moved for an order "confirming" his pro hac vice status. Apparently, defendants' counsel had suggested that as a result of the revocation in *Filppula-McArthur*, they would contest Ball's pro hac vice privilege in *Obey*. In response to Ball's preemptive motion, the defendants filed an affidavit of Dr. Halloin objecting to Attorney Ball's continued involvement in *Obey*, a copy of Judge McKay's order revoking Ball's pro hac vice privilege in *Filppula-McArthur*, and the transcript of the hearing at which Judge McKay made his ruling. At an ensuing hearing the defendants explicitly moved for revocation of Ball's status.

¶ 25. After hearing argument on the motions, Judge Atkinson postponed his ruling. Judge Atkinson did, however, express his concerns about allowing Ball to proceed in his courtroom when his conduct in another branch of the same circuit court was sufficient to cause revocation of the privilege to appear. Judge Atkinson said that he did not want to "submit these defendants [and] future Wisconsin jurors, Brown County jurors, in this case to the possibility of a mistrial, as was granted by [Judge McKay]."

¶ 26. Several weeks later, Judge Atkinson issued his order revoking Attorney Ball's pro hac vice admission. Judge Atkinson stated that he had reviewed a partial transcript of *Filppula-McArthur*, which he noted was a medical malpractice action with nearly identical defendants as before him in *Obey*. After enumerating the reasons given by Judge McKay for revoking Ball's privilege, Judge Atkinson undertook consideration of several other factors. First, he noted

that Attorney Ball's clients had an interest in representation by counsel of their choice. Second, he considered the countervailing interest in the integrity of the judicial system, which dictated "due consideration" of Judge McKay's comments.

¶ 27. Third, Judge Atkinson focused on Attorney Ball's competence to practice law in a Wisconsin court:

> Wisconsin has the benefit of extremely competent counsel in all facets of law, including medical malpractice cases. Clearly, there are other attorneys who can competently handle this case and represent the best interests of the Plaintiffs.
>
> Attorney Ball's Illinois residence does not preclude him from obtaining a license to practice law in the state of Wisconsin. Mr. Ball can apply for Wisconsin licensure and become a member of this state's bar. . . .Wisconsin's continuing legal education requirements can be utilized by Attorney Ball to address practice concerns noted by Judge McKay.

Weighing these factors, Judge Atkinson concluded it was proper to revoke Ball's pro hac vice admission.

¶ 28. Ball and his clients appealed and the court of appeals affirmed. It concluded that the circuit court had properly exercised its discretion by applying the relevant facts to the appropriate standard, *i.e.*, SCR 10.03(4), and reaching a reasonable conclusion in revoking Ball's pro hac vice admission. *Obey v. Halloin*, 2000 WI App 99, ¶ 20, 235 Wis. 2d 118, 612 N.W.2d 361. In doing so the court of appeals rejected, among other arguments, Ball's contention that under SCR 10.03(4) a circuit court may not consider conduct that occurred before another court. *Id.* at ¶ 10. The court of appeals noted that because SCR 10.03(4) allows revocation of pro hac vice status for " 'incompetency to represent a client *in a Wisconsin court*,' " the rule "by

its terms also applies to conduct that has not occurred before the court withdrawing admission." *Id.* at ¶¶ 8–9.

## II

¶ 29. This case presents us with questions of first impression involving the interpretation and application of SCR 10.03(4), in particular the provisions of the rule controlling the revocation of pro hac vice admission to Wisconsin courts. The rule reads, in pertinent part:

> A judge in this state may allow a nonresident counsel to appear in his or her court and participate in a particular action or proceeding in association with an active member of the state bar of Wisconsin who appears and participates in the action or proceeding. *Permission to the nonresident lawyer may be withdrawn by the judge granting it if the lawyer by his or her conduct manifests incompetency to represent a client in a Wisconsin court or by his or her unwillingness to abide by the rules of professional conduct for attorneys and the rules of decorum of the court.*

SCR 10.03(4) (emphasis added).[6]

¶ 30. While the parties agree on the standard of review to be applied in reviewing a circuit court's decision to revoke an attorney's pro hac vice admission under SCR 10.03(4), this court has never addressed the issue. The parties share the opinion that the decision is a matter within the circuit court's discretion. We agree.

---

[6] The procedural protections required when a circuit court revokes counsel's pro hac vice admission are addressed by this court in *Jensen v. Wisconsin Patients Comp. Fund*, 2001 WI 9, 241 Wis. 2d 142, 621 N.W.2d 142.

¶ 31. This court has described the power to admit an attorney pro hac vice under SCR 10.03(4) as discretionary. *State v. Lehman,* 137 Wis. 2d 65, 82, 403 N.W.2d 438 (1987); *see also State v. Mosley,* 201 Wis. 2d 36, 49, 547 N.W.2d 806 (Ct. App. 1996). The power to revoke is likewise a matter within the circuit court's discretion and will be upheld absent an erroneous exercise of discretion.

¶ 32. We will find no erroneous exercise of discretion if the record shows that the circuit court reached a reasonable conclusion after application of the law to the relevant facts. *Ness v. Digital Dial Communications, Inc.,* 227 Wis. 2d 592, 600, 596 N.W.2d 365 (1999). Questions regarding the interpretation of SCR 10.03(4) that arise during our review of the circuit court's exercise of discretion in the actions before us are questions of law subject to our independent review. *City of West Allis v. Sheedy,* 211 Wis. 2d 92, 96, 564 N.W.2d 708 (1997).

A

¶ 33. To provide context, we begin our discussion with a review of the history, nature, and purpose of pro hac vice admissions. The privilege to appear in a Wisconsin court pro hac vice has been recognized in Wisconsin for more than a century. *See In re Mosness,* 39 Wis. 509, 510 (1876); *see also State v. Russell,* 83 Wis. 330, 53 N.W. 441 (1892) ("A foreign counsel may, by special favor, be permitted to appear for his clients in our courts."). The nature of pro hac vice admission to practice before Wisconsin courts has not changed since we described it in 1925:

> As a matter of comity the courts of this state have practically always. . .cheerfully conceded the privilege to attorneys of sister states to engage in the conduct of trials in this state. But such has always been recognized as a privilege extended to such outside counsel and not as a right to be claimed on their part.

*In re Pierce*, 189 Wis. 441, 450, 207 N.W. 966 (1926) (citations omitted). Following integration of the state bar, the privilege to appear pro hac vice was incorporated into the State Bar Rules and their progeny, today's Supreme Court Rules.[7]

¶ 34. When a circuit court grants this privilege, both client and counsel benefit. The client will be represented by counsel of his or her choice. The attorney is excused from the normal prerequisites to Wisconsin practice, such as the requisite knowledge of Wisconsin law and procedure (as ensured by a bar examination or the diploma privilege), character and fitness evaluations, and continuing legal education.

¶ 35. However, these prerequisites to practice are safeguards that ensure ethical and competent representation. By allowing counsel to appear pro hac vice, we have removed the safeguards that ensure their clients the same ethical and competent representation required of Wisconsin attorneys. In lieu of such safeguards, we have entrusted to the circuit court the

---

[7] Originally, the controlling rule stated:

Any court in this state may by special permission granted by it allow non-resident counsel to appear and participate in a particular action or proceeding in association with an active member of the State Bar of Wisconsin who appears and participates in such action or proceeding.

State Bar R. 2, § 4 (1956) (reprinted in Wis. Bar. Bull., Oct. 1956, at 19).

discretionary power to terminate pro hac vice representation.

¶ 36. Today the power to grant and revoke pro hac vice admissions is embodied at SCR 10.03(4). As we explained in *State v. Lehman*, 137 Wis. 2d 65, 81, 403 N.W.2d 438 (1987), "[t]he purpose of SCR 10.03(4) is to control the unauthorized practice of law and assure that the public 'is not put upon or damaged by inadequate or unethical counsel.' "

With these principles in mind we proceed to review the circuit court's discretionary decision to revoke Attorney Ball's pro hac vice admission in the cases before us.

■

¶ 37. Under the plain language of SCR 10.03(4), there are three bases for revocation of an attorney's pro hac vice status: (1) manifestation of incompetency to represent a client in a Wisconsin court; (2) unwillingness to abide by the rules of professional conduct for attorneys; and (3) unwillingness to abide by the rules of decorum. In light of the plain meaning of SCR 10.03(4) and our deferential review of discretionary determinations, we conclude that the circuit court did not erroneously exercise its discretion in revoking Attorney Ball's pro hac vice admission in either *Filppula-McArthur* or *Obey*.

¶ 38. In *Filppula-McArthur*, the circuit court delineated the reasons underlying its decision to revoke Attorney Ball's pro hac vice admission. Judge McKay cited Ball's unwillingness to abide by the rules of the court, his insistence on revisiting repeatedly the court's decisions, his continued failure to heed the admonitions of the court regarding his conduct, and Ball's unfamiliarity or disregard for Wisconsin procedural rules. These factors implicate two of the express

grounds for revocation under SCR 10.03(4); namely an unwillingness to abide by the rules of professional conduct for attorneys and the manifestation of incompetency to represent a client in a Wisconsin court. The record supports revocation on both grounds.

¶ 39. It is professional misconduct for an attorney to violate the attorney's oath. SCR 20:8.4(g); *In re Disciplinary Proceedings Against Beaver*, 181 Wis. 2d 12, 22, 510 N.W.2d 129 (1994). As part of the attorney's oath an attorney swears that he or she "will maintain the respect due to courts of justice and judicial officers." SCR 40.15. Thus, a failure to maintain due respect to the courts may constitute a violation of the rules of professional conduct. *See In re Disciplinary Proceedings Against Pangman*, 216 Wis. 2d 440, 442–43, 574 N.W.2d 232 (1998).

¶ 40. To our knowledge Attorney Ball has never taken Wisconsin's attorney's oath. Nevertheless he is required to abide by the Rules of Professional Conduct for Attorneys and is bound by the oath. *See* SCR 10.03(4); SCR 20:4.8(g). Judge McKay identified conduct by which Attorney Ball repeatedly transgressed this oath.

¶ 41. With his pretrial maneuverings, Ball evinced a lack of respect for the court and its orders. However, Attorney Ball's disrespect for the court and its rulings was more pronounced during the trial. Rather than heed Judge McKay's admonishments during the opening statement, Ball persisted. Similarly, Ball demonstrated intransigence in the face of the court's repeated evidentiary rulings regarding the allowable scope of Dr. Inglese's testimony. Rather than preserving his objections on the record and proceeding in compliance with the court's directives, Ball repeat-

edly ignored the court's ruling. Judge McKay explained to Ball multiple times that Dr. Inglese was not to testify as to cause, yet Ball explicitly asked Dr. Inglese questions relating to cause on three separate occasions.[8]

¶ 42. In addition to Ball's unwillingness to abide by the rules of professional conduct, the circuit court's decision in *Filppula-McArthur* relied on Ball's "incompetency to represent a client in a Wisconsin court." SCR 10.03(4). The circuit court noted Ball's "unfamiliarity" with Wisconsin's procedural rules. The record bears out Judge McKay's determination. If Attorney Ball's transgressions were not the result of willful disregard of the procedural rules, most of those mishaps could only be explained by an unfamiliarity with the procedural rules. For example, his conduct evinced a lack of familiarity with Wis. Stat. § 802.10, which describes the circuit court's prerogative in setting deadlines through its scheduling order. Because competency entails "the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation," SCR 20:1.1, we are satisfied that unfamiliarity with the rules of procedure amounts

---

[8] In considering Ball's conduct, the court of appeals in *Filppula-McArthur* concluded that Attorney Ball was in violation of SCR 20:3.4(c). As part of the rule entitled "Fairness to opposing party and counsel," SCR 20:3.4(c) provides that an attorney shall not "knowingly disobey an obligation under the rules of the tribunal except for an open refusal based on an assertion that no valid obligation exists." SCR 20:3.4(c). Although we agree with the conclusion of the court of appeals that the circuit court did not erroneously exercise its discretion, we do not base our analysis on this alleged violation.

to incompetence, and this is a reasonable basis for pro hac vice revocation.

¶ 43. We next turn to our review of Judge Atkinson's exercise of discretion in *Obey*. Judge Atkinson's decision rests to a large extent on Attorney Ball's conduct in *Filppula-McArthur* and Judge McKay's determinations in that case. However, Judge Atkinson engaged in his own review of a partial transcript of *Filppula-McArthur* and then provided his own, more extensive ruling explaining his decision to revoke Ball's pro hac vice admission. Because Judge Atkinson reached a reasonable conclusion after applying the appropriate standards to the relevant facts we cannot conclude that the decision to revoke in *Obey* was an erroneous exercise of discretion.

¶ 44. In *Obey* Judge Atkinson discussed Judge McKay's ruling in *Filppula-McArthur*, which implicates both an unwillingness to abide by the rules of professional conduct and incompetence. Thereafter, Judge Atkinson emphasized the latter, demonstrating a concern about Attorney Ball's competence to represent clients in a Wisconsin court. As we have stated above, the record reasonably supports the conclusion that Attorney Ball manifested incompetence in *Filppula-McArthur*, a case sharing parties, subject matter, counsel and closeness in time with the case before Judge Atkinson. As such, there was a reasonable basis for Judge Atkinson's discretionary decision to revoke Ball's pro hac vice admission.

¶ 45. In challenging the circuit court's exercise of discretion in *Obey*, Attorney Ball argues that a circuit court is without power to revoke pro hac vice privileges for conduct occurring before a different court. Ball also argues that neither the doctrine of inherent powers nor the power to disqualify counsel allows a circuit court to

discipline an attorney for conduct occurring before a different court. He claims that a circuit court that does so is disciplining an attorney and is usurping the power of the Board of Attorneys Professional Responsibility (BAPR)[9] to investigate and initiate disciplinary proceedings against pro hac vice attorneys.

¶ 46. Attorney Ball ignores the plain text of the rule establishing a circuit court's power to revoke pro hac vice admissions. As the court of appeals explained in *Obey*, SCR 10.03(4) allows a circuit court to revoke pro hac vice admission when an attorney "manifests incompetency to represent a client *in a Wisconsin court.*" SCR 10.03(4) (emphasis added). On its face SCR 10.03(4) allows a circuit court to consider an attorney's performance in the courts of this state when deciding whether to revoke pro hac vice admission. Judge Atkinson was thus well within the bounds of SCR 10.03(4) when he considered the conduct that occurred, not merely in a Wisconsin court, but in a courtroom across the hall.

¶ 47. Attorney Ball also misconstrues the nature of the power exercised by the circuit court when revoking pro hac vice admission. Revocation of pro hac vice admission is not a function of attorney discipline. Attorney Ball correctly cites SCR 20:8.5(a) for the proposition that BAPR (now OLR) has the power to

---

[9] Effective October 1, 2000, Wisconsin's attorney disciplinary process was restructured. The name of the body responsible for investigating and prosecuting cases involving attorney misconduct was changed from the Board of Attorneys Professional Responsibility to the Office of Lawyer Regulation (OLR).

discipline attorneys admitted pro hac vice.[10] However, the disciplinary authority over pro hac vice counsel is quite another matter from the granting and withdrawing of the right to appear before a particular court. The circuit court is the sole holder of that power. Ball incorrectly looks to the doctrine of inherent powers and the power to disqualify for the source of such power, because one need look no further than SCR 10.03(4).

### B

¶ 48. While we conclude that the plain language of SCR 10.03(4) controls the revocation of pro hac vice admissions and that under those standards the circuit court properly exercised its discretion in both *Filppula-McArthur* and *Obey*, we must address the several alternatives to a plain language interpretation of SCR 10.03(4) suggested by Attorney Ball. Ball proposes two substantive standards to be applied under SCR 10.03(4), and also argues that policy reasons dictate against any differential treatment of out-of-state and in-state counsel.

¶ 49. First, Ball contends that the pro hac vice revocation provisions of SCR 10.03(4) should be read to require revocation of pro hac vice admission only for

---

[10] Supreme Court Rule 20:8.5, reads in pertinent part:

(a) Disciplinary Authority. A lawyer admitted to the bar of this state is subject to the disciplinary authority of this state regardless of where the lawyer's conduct occurs. *A lawyer allowed by a court of this state to appear and participate in a proceeding in that court is subject to the disciplinary authority of this state for conduct that occurs in connection with that proceeding.* For the same conduct, a lawyer may be subject to the disciplinary authority of both this state and another jurisdiction where the lawyer is admitted to the bar or allowed to appear in a court proceeding.

SCR 20:8.5(a) (emphasis added).

conduct that is "egregious" and is "likely to infect future proceedings." In support of this proposition he cites a smattering of case law from various jurisdictions which apply this standard.[11]

¶ 50. Ball's proposed standard conflicts with the plain language of SCR 10.03(4). He points to no ambiguity in SCR 10.03(4), and Ball offers no other compelling reason why we should open the rule to such a broad interpretation. Also, the case law applying the proposed egregiousness standard is readily distinguishable. In jurisdictions adopting the standard of egregiousness, the rules for pro hac vice revocation do not set forth the same express standard as SCR 10.03(4). *See, e.g., Speer v. Donfeld*, 969 P.2d 193, 200 (Ariz. Ct. App. 1998) (noting lack of standard controlling revocation in applicable rule).

¶ 51. Attorney Ball's second proposed standard is that under SCR 10.03(4) a court must consider the client's interest in representation by the attorney of his or her choice before revoking an attorney's pro hac vice admission under SCR 10.03(4). Again, he offers a sampling of extra-jurisdictional case law in support of this proposition.[12]

---

[11] Attorney Ball cites the following cases: *Koller v. Richardson-Merrell, Inc.* 737 F.2d 1038 (D.C. Cir. 1984) *rev'd on other grounds*, 472 U.S. 424 (1985); *Board of Educ. v. Nyquist*, 590 F.2d 1241 (2d Cir. 1979); *Biocore Med. Techs., Inc. v. Khosrowshahi*, 181 F.R.D. 660 (D. Kan. 1998); *Speer v. Donfeld*, 969 P.2d 193 (Ariz. Ct. App. 1998).

[12] Attorney Ball cites the following cases in support of this proposition: *Koller*, 737 F.2d 1038, *Nuri v. PRC, Inc.*, 5 F. Supp. 2d 1299 (M.D. Ala. 1998); *Biocore Med. Techs., Inc.*, 181 F.R.D. 660; *Nault's Auto Sales, Inc., v. American Honda Motor Co.*, 148

¶ 52. While consideration of the client's interest is praiseworthy and desirable, there is simply no room to construe SCR 10.03(4) as requiring such a consideration. We note that Judge Atkinson specifically considered Attorney Ball's clients' interests in the counsel of their choice before making his revocation decision in *Obey*. We also note that Judge McKay referenced the clients' interests. We believe it to be a desired practice for the court to weigh the interests of the client in making its revocation determination, but given the plain language of SCR 10.03(4), it cannot be said to be an erroneous exercise of discretion to fail to do so.

¶ 53. The last of Ball's contentions is that policy reasons dictate that a non-Wisconsin attorney's pro hac vice status should not be revoked for conduct that would not warrant removal of a Wisconsin attorney. Citing federal precedent for the proposition of equal grounds for disqualification, Ball argues that subjecting pro hac vice counsel to a "higher standard of conduct" will temper the zeal with which they advocate and thus lead to a disparity in the quality of representation.[13]

¶ 54. We find numerous flaws in Attorney Ball's position and argument. First and foremost, this argu-

F.R.D. 25 (D.N.H. 1993); *Matter of Abrams*, 465 N.E.2d 1 (N.Y. 1984).

[13] In support of his argument against differential treatment Ball cites *United States v. Collins*, 920 F.2d 619, 626 (10th Cir. 1990); *Koller* 737 F.2d at 1054–55; and *Cooper v. Hutchinson*, 184 F.2d 119, 123 (3d Cir. 1950). We note that not all federal courts follow this approach. *See, e.g., Mruz v. Caring, Inc.*, 107 F. Supp. 2d 596, 604 (D.N.J. 2000) (citing local rule allowing revocation of pro hac vice admission for failure to abide by scheduled court dates).

ment ignores SCR 10.03(4). Attorney Ball offers no suggestion as to how the rule comes into play and does not attempt to reconcile his position with its plain language. The existence of the revocation provision of SCR 10.03(4) simply belies any contention that regularly admitted members of the Wisconsin bar and non-Wisconsin counsel should be subject to revocation of their admission on equal grounds.

¶ 55. Attorney Ball's argument against differential treatment necessarily implies that we are to read SCR 10.03(4) out of our rules. While we have the power to change the rule, such change is generally best accomplished through the rule-making process. Our authority to create and amend the Supreme Court Rules is a function of our regulatory jurisdiction. A change in those rules is properly achieved through a petition initiating the procedures established by our published internal operating procedures and SCR Chapter 98.

¶ 56. Most problematic with Ball's position is that it ignores the fundamental difference between regularly admitted counsel and attorneys admitted pro hac vice. On the one hand, members of the Wisconsin bar are, by the very nature of that membership, authorized to appear before a Wisconsin court. On the other hand, the long line of case law establishing pro hac vice admission in Wisconsin explains that counsel appearing pro hac vice are the recipients of a privilege conferred by this court. As our discussion of the history and purpose of pro hac vice admission above explains, we are satisfied that the differences between pro hac vice counsel and licensed Wisconsin attorneys require differential treatment in order to protect the public.

138

¶ 57. Ball asserts that differential treatment of pro hac vice counsel is tantamount to subjecting them to a heightened "standard of conduct." However, the revocation provisions of SCR 10.03(4) do not set the standard of conduct expected of pro hac vice counsel at a level higher than that expected of regularly admitted counsel. The standards of conduct expected of all attorneys practicing before a Wisconsin court are set by SCR Chapters 20 and 62. While the implications of a violation of those standards may be more immediate for attorneys admitted pro hac vice, the substantive provisions dictating the conduct expected of counsel are the same as those controlling the conduct of licensed Wisconsin attorneys.

¶ 58. Lastly, Attorney Ball would have us focus on the "chilling effect" and the alleged disparity in quality of representation that results from the difference in treatment. Even if we were to assume that such a disparity exists, it would not be an appropriate remedy to lessen the degree of competence and ethical integrity we expect of pro hac vice counsel. The appropriate remedy is earnest enforcement of the rules and regulations governing Wisconsin attorneys.

¶ 59. We conclude our discussion of SCR 10.03(4) by noting that we have rejected Ball's arguments regarding heightened standards for pro hac vice revocation not only because they lack support in the text and history of the rule, but also because they would shackle the circuit court's discretionary power which serves to protect the public under that rule. Our courts cannot counteract unprofessional conduct by wavering when forced to respond to it. If the rules are infrequently enforced, they will be frequently violated.

## III

¶ 60. Attorney Ball also challenges the assess-ment of costs against him arising from the mistrial in *Filppula-McArthur*. A circuit court may impose costs on an attorney whose actions have resulted in a mis-trial, and we will not disturb that decision absent an erroneous exercise of discretion. *Schultz v. Darlington Mut. Ins. Co.*, 181 Wis. 2d 646, 656, 511 N.W.2d 879 (1994). Ball's sole challenge to the assessment of costs is that the evidentiary ruling regarding Dr. Inglese's testimony was erroneous and therefore the mistrial and the subsequent assessment of costs are premised on an error of law.

¶ 61. Essentially, Attorney Ball asks us to revisit the granting of the mistrial. Ball may not challenge the assessment of costs on these grounds. The order grant-ing the mistrial has never been appealed, and when seeking review at the court of appeals Ball did not argue that the erroneous evidentiary rulings under-mined the assessment of costs. Rather, he argued to the court of appeals that his conduct was not of the type deserving sanctions. While Ball's clients appealed the evidentiary rulings, these arguments were unrelated to assessment of costs. Now that his clients are no longer party to the appeal, he seeks to bootstrap his clients' evidentiary issue to his personal challenge to the assessment of costs. We will not allow him to do so, and we will not revisit the evidentiary ruling or the granting of the mistrial.[14]

---

[14] We do not suggest that the clients in a case such as this must accompany their attorney up the appellate ladder so the attorney may challenge the order granting a mistrial upon which the assessment of costs is premised. After all, where the

¶ 62. In the absence of any other challenge to the circuit court's discretionary assessment of costs, we note that the circuit court attributed the mistrial to Ball's misconduct, the same conduct justifying revocation of Ball's pro hac vice status. Because the record reveals that the circuit court made a reasoned determination that Ball's misconduct precipitated the mistrial, we cannot conclude that it erroneously exercised its discretion. *See Schultz*, 181 Wis. 2d at 656–58.

## IV

¶ 63. In sum, we conclude that in both *Filppula-McArthur* and *Obey*, the circuit court properly exercised its discretion under SCR 10.03(4) in revoking Ball's pro hac vice admission on the grounds that he manifested an unwillingness to abide by the rules of professional conduct and incompetency to represent a client in a Wisconsin court. In reaching this conclusion we reject the various arguments put forth by Ball in support of a heightened standard of pro hac vice revocation. We also conclude that the assessment of costs and fees arising from the mistrial was not an erroneous exercise of discretion. Accordingly, we affirm both decisions of the court of appeals.

*By the Court.*—The decisions of the court of appeals are affirmed.

¶ 64. JON P. WILCOX, J. did not participate.

costs have been assessed against counsel personally, only the attorney has an interest in the assessment of costs. However, we require that the attorney properly preserve the basis for his challenge to the assessment of costs.