**COURT OF APPEALS**
**DECISION**
**DATED AND FILED**

**December 26, 2024**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal Nos.    2022AP1030**
**2022AP1290**
**2022AP1423**

Cir. Ct. No. 2021CV3007

**STATE OF WISCONSIN**

**IN COURT OF APPEALS**
**DISTRICT II**

AMERICAN OVERSIGHT,

    PETITIONER-RESPONDENT,

  V.

ASSEMBLY OFFICE OF SPECIAL COUNSEL,

    RESPONDENT-APPELLANT,

ROBIN VOS, EDWARD BLAZEL AND WISCONSIN STATE ASSEMBLY,

    RESPONDENTS.

APPEALS from orders of the circuit court for Dane County: FRANK D. REMINGTON, Judge. *Reversed; appeal dismissed.*

Before Gundrum, P.J., Grogan and Lazar, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. In these consolidated appeals, the Assembly Office of Special Counsel (OSC) seeks review of numerous circuit court orders entered in this Public Records Law case. OSC no longer disputes that it was subject to the Public Records Law and was required to turn over responsive records to American Oversight pursuant to a mandamus order entered early on in the litigation. Rather, these appeals primarily concern the court's determination that OSC was in contempt of that order.

¶2 Specifically, four orders are at issue in this appeal: (1) a June 15, 2022 order finding OSC in contempt for failing to comply with the mandamus order requiring OSC to produce all records responsive to American Oversight's records requests; (2) a July 18, 2022 order denying OSC's motion to recuse the presiding judge; (3) an August 17, 2022 order that supplemented the order denying recusal and revoked the pro hac vice admission of OSC's out-of-state attorneys; and (4) an August 17, 2022 order that purged OSC's contempt but imposed sanctions for twelve days' noncompliance.

¶3 We agree with American Oversight that the contempt order was not invalidated by certain of the circuit court's procedural actions in the lead-up to a June 10, 2022 contempt hearing. However, at the June 10 hearing, the court erroneously exercised its discretion by denying OSC's request for an adjournment due to the non-appearance of its only noticed witness. That non-appearance was apparently precipitated by the court's comments at a hearing two days earlier that if OSC intended to blame the witness for OSC's deficient records response, the

2

witness might consider retaining personal counsel given the possibility of jail confinement as a contempt sanction.

¶4     The circuit court erred by failing to completely analyze the factual circumstances that led to OSC's adjournment request. Specifically, no reasonably competent attorney less than a day after being retained, would have permitted his or her client to appear at an evidentiary hearing to give sworn testimony that could result in severe personal consequences. Despite this, the court pressed on with the hearing, after which it found OSC in contempt based upon a deficient evidentiary presentation. Because the court erroneously exercised its discretion when it refused to grant OSC's adjournment request, it follows that the resulting contempt order and sanctions award must be reversed.

¶5     OSC also appeals the denial of its motion to recuse the presiding judge. We conclude this issue is moot in light of our reversing the contempt and sanction orders. In determining whether OSC had satisfied the purge conditions, the circuit court concluded that all responsive documents remaining in OSC's possession had been turned over to American Oversight prior to the finding of contempt. Given that finding, there is no possibility of future circuit court proceedings stemming from the Public Records Law requests at issue in this case, and we decline to consider the parties' arguments regarding recusal.

¶6     The circuit court's decision to revoke the pro hac vice admissions of OSC's out-of-state counsel is not moot given the reputational interests of the attorneys at stake. We conclude the procedure the circuit court used to revoke the pro hac vice admissions did not comport with Wisconsin law, insofar as the

revocations occurred without providing notice of the reasons for the revocations and an opportunity to be heard.

¶7 For these reasons, as set forth in more detail below, we reverse the June 15, 2022 order finding OSC in contempt and those portions of the August 17, 2022 order awarding contempt sanctions and revoking the pro hac vice admission of OSC's out-of-state counsel. Having concluded that the recusal issue is moot, we dismiss the appeal of the July 18, 2022 order and take no action on that portion of the circuit court's August 17, 2022 order supplementing its recusal decision.

## BACKGROUND

¶8 In May 2021, Wisconsin State Assembly Speaker Robin Vos announced that the Assembly planned to hire a team to investigate the November 2020 election. In June, the Assembly retained former Wisconsin Supreme Court Justice Michael Gableman to supervise the investigation. In August 2021, Gableman was designated as special counsel to oversee an "Office of The Special Counsel."

¶9 American Oversight submitted seven requests for various types of records from OSC pursuant to the Public Records Law, WIS. STAT. §§ 19.31–19.37 (2021-22),[1] on September 15, October 15, and October 26, 2021.[2] American Oversight received a response to only the October 15 request, which

---

[1] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

[2] The Wisconsin State Assembly, Speaker Vos, and Assembly Chief Clerk Edward Blazel were also served with the records requests. They are not respondents to this appeal and the records requests addressed to them are not at issue.

was an email from OSC employee Zakory Niemierowicz acknowledging the request and pledging to send a response letter once the person in charge of public records responses returned to the office. In December, Niemierowicz sent an email with numerous attachments totaling over one hundred pages of material, which he represented as the "open records for the Office of Special Counsel up until December 1st, 2021."

¶10    American Oversight believed that the December production was incomplete and did not include numerous responsive records that OSC would be expected to have. Moreover, OSC's response acknowledged that it had withheld some documents. American Oversight then filed the present petition seeking a writ of mandamus compelling OSC to produce all requested records. American Oversight accompanied the petition with an application for an alternative writ of mandamus.[3]

¶11    The circuit court signed the alternative writ and ordered OSC to release the responsive records or to show cause at a January 21, 2022 hearing as to why the records should not be released. Out-of-state attorneys for both American Oversight and OSC were admitted to practice pro hac vice for purposes of the litigation.

---

[3] "Mandamus" generally refers to a legal remedy to compel a government actor to fulfill a mandatory duty when there is no discretion in the matter. *See State ex rel. Milwaukee Police Ass'n v. Jones*, 2000 WI App 146, ¶7 n.7, 237 Wis. 2d 840, 615 N.W.2d 190 (citing *mandamus*, BLACK'S LAW DICTIONARY (7th ed. 1999)). An alternative writ of mandamus is a "mandamus issued upon the first application for relief, commanding the defendant either to perform the act demanded or to appear before the court at a specified time to show cause for not performing it." *Id.*

¶12    At the January hearing, the circuit court directed OSC to file, under seal for in-camera review, all documents it had withheld.  The court rejected the various legal theories propounded by OSC in opposition to that procedure, reasoning that expedited judicial review was necessary to balance the public's right to the records and OSC's authority as government officials.[4]  The court gave preliminary thoughts on the legal matters OSC had raised and it invited the parties to further brief those issues.  The court memorialized its directives in a written order dated January 25, 2022 (the mandamus order).

¶13    A few days before OSC was required to file the responsive records with the circuit court, OSC moved for reconsideration of the court's decision to require in-camera inspection of the records or, alternatively, amendment of the briefing schedule.  The court denied the motion the following day.  OSC then filed several hundred pages of records under seal.  Meanwhile, OSC moved to quash the alternative writ of mandamus and to provide ex parte briefing in connection with the court's in-camera review of OSC records.

¶14    On March 2, 2022, the circuit court issued an order addressing the pending motions and concluding that all OSC records submitted under seal were subject to disclosure.  The court denied OSC's motion to quash the alternative writ, concluding that OSC had failed to provide a specific reason for withholding at the time it denied American Oversight's records requests and that,

_____

[4] Among the OSC's various arguments were the assertions that it was not properly served, that the Public Records Law did not apply to OSC because it was conducting a legislative investigation, and that any records produced were required to be kept confidential by a possibly expired contract between Vos and Gableman.

consequently, OSC was prohibited from advancing new, post-litigation reasons for nondisclosure.

¶15     Accordingly, the circuit court viewed OSC's disclosure obligations as a straightforward exercise in statutory interpretation, under which it found no clear statutory exception that would permit keeping the records secret. The court also rejected the arguments that the legislature exempted the elections investigation from the Public Records Law and that the legislature had, by contract, required confidentiality of the records on the part of OSC. In all, the court determined "OSC had no rational basis to withhold records," and it awarded attorneys' fees and $1,000 in punitive damages against OSC.

¶16     The circuit court stayed its order pending a March 8, 2022 hearing to address OSC's request for a stay pending appeal. Following that hearing, the court entered an order lifting the stay, and it unsealed the records OSC had provided.[5]

¶17     After reviewing the released records, American Oversight identified "gaps" and requested clarification from OSC. OSC's response included the disclosure of additional responsive records, which it claimed had been inadvertently omitted from the earlier in-camera review. OSC's response also asserted OSC was not required to comply with records retention laws and represented that "OSC routinely deletes documents and text messages that are not of use to the investigation."

---

[5] OSC appealed from that order. The appeal, No. 2022AP636, was originally consolidated with these appeals but was voluntarily dismissed prior to the completion of briefing.

¶18   In April 2022, based on OSC's disclosure of additional records, American Oversight sought modification of the order and injunctive relief. American Oversight suggested that further relief might include an order to again search and produce responsive records, a contempt order, punitive damages, or an injunction prohibiting the deletion of records.   The circuit court entered a temporary order prohibiting the destruction of any responsive records and set the matter for a scheduling conference.

¶19   At the scheduling conference, the circuit court construed American Oversight's motion as one for contempt.   It concluded that American Oversight had demonstrated a prima facie case for contempt based on OSC's admitted failure to disclose all responsive records.   Accordingly, the court scheduled a hearing at which OSC would have the burden of demonstrating that its violation of the mandamus order was unintentional.   The court also set a briefing schedule on American Oversight's motion.

¶20   OSC identified a single witness—Niemierowicz—for the next-scheduled contempt hearing on June 10, 2022.   American Oversight arranged to depose Niemierowicz, and then—suspecting that Niemierowicz had very little information or decision-making authority regarding the records responses—subpoenaed Gableman for the June 10 hearing.   OSC moved to quash the subpoena, which the circuit court heard at a hastily scheduled hearing on June 8.

¶21   At the hearing, OSC took the position that Gableman's testimony was unnecessary because OSC had now voluntarily disclosed all responsive records.   Further, OSC argued that Niemierowicz was solely responsible for executing Gableman's directives about how to respond to the records requests, and

8

therefore he could testify as to both what those directives were and how he had executed them.

¶22 The circuit court denied the motion to quash. Among the reasons the court cited was American Oversight's assertion that Niemierowicz, during his deposition, had implicated Gableman in connection with the incomplete record disclosures, or had at least suggested that he had had an "imperfect understanding" of the directions Gableman had given him.

¶23 On that point, at the conclusion of the hearing, the circuit court sought to give "all the individuals who play a role in a disobedience to the Court advance notice of the possibilities that could occur so they can prepare accordingly." Perceiving that OSC was attempting to "put the total responsibility of the deficiency [in records production] on Mr. Niemierowicz's shoulders," the court provided a lengthy caution to Niemierowicz, who was personally present:

> Understanding that one remedial sanction can be incarceration, I wonder whether Mr. Niemierowicz has been apprised of the possibility that he may need to seek independent legal counsel. If, in fact, the strategy of [OSC] is to place the failure to comply with the Court's orders squarely upon his shoulders. Because I'm not sure that Mr. Niemierowicz's interests … have not diverged from the interest of Mike Gableman or [OSC].
>
> I'm not suggesting there's a conflict of interest. I am saying that I also proceed very carefully and extremely cautiously when the question before the Court [is] contempt, and where one of the sanctions that could be imposed is confinement in the Dane County jail. I just raise the issue because I don't believe anyone is deserving—certainly not Mr. Niemierowicz's interest by having this occur to him spontaneously on Friday's hearing.
>
> I don't know that it's been discussed. It might not have occurred, but I do think a discussion may be warranted

9

because Mr. Niemierowicz's personal interests might be to escape the scrutiny of the Court for deficiencies that appear now to be undisputed that he was acting at the direction of Mike Gableman; and Mike Gableman told him what to do, how to do it, and when to do it. That very well may be grounds for the Court to find that the individual who is responsible for following the Court's order should be relieved of his failure. I don't know.

But in reviewing the documents and understanding the arguments and consideration of why [OSC] does not believe Mike Gableman should be there—knowing that Mike Gableman is going to be there and also Mr. Niemierowicz is, I just think it would be appropriate to have a discussion over whether a potential conflict exists. If so, whether there's a knowing and written waiver or other discussion.

I am not suggesting that anyone has done anything wrong or that anyone has failed to do anything. It just appears to me that at this junction of the litigation, the interest may be divergent, which would cause this individual to look perhaps probably to his own personal interest or at least have a discussion with an attorney either provided to him by [OSC], by [OSC's defense counsel], or by his own choosing.

OSC responded that based on the existing record, incarceration as a sanction would be "incomprehensibly disproportionate," but the court reiterated that the "discussion … should be had so we don't have a problem on Friday if it were to come at that late date."

¶24 At the inception of the hearing on June 10, 2022, OSC moved for an adjournment. As grounds for the motion, OSC's counsel stated he had told Gableman and Niemierowicz that he would not advise them regarding any potential conflicts or the consequences of incarceration and that they should retain separate counsel. OSC's counsel further represented that Niemierowicz had done so, and that at 6:00 p.m. the prior night, he was told that Niemierowicz would not attend the June 10 hearing. OSC's counsel further stated that Gableman was "in

the process of attempting to locate someone to represent him." As a result of Niemierowicz's absence, OSC's counsel asserted OSC was unable to proceed with its case in opposition to the contempt motion. American Oversight opposed the adjournment and suggested that the circuit court could proceed with the hearing using Niemierowicz's deposition transcript in lieu of his live testimony.

¶25    The circuit court denied the adjournment motion. It reasoned that the cautionary statements at the prior hearing should not have been a surprise to Niemierowicz and were merely meant "to apprise him of the consequences that anyone should prepare for if they are to have been accused of intentionally violating a court order." The court also invoked the transparency objective of the Public Records Law and the fact that a considerable number of news organizations were in attendance at the hearing.

¶26    Citing judicial economy and "fairness to the parties", the circuit court decided to proceed with taking Gableman's testimony over OSC's objection. Gableman refused to answer questions until he was provided with personal counsel. In response to further questioning, Gableman invoked his constitutional right to remain silent and was dismissed as a witness. American Oversight submitted additional evidence of noncompliance that was received over OSC's objection. Based on the lack of evidence submitted by OSC, the court concluded OSC had failed to demonstrate its disobedience of the court order was not intentional, and it found OSC in contempt.

¶27    The circuit court entered a written order on June 15, 2022 containing a lengthy series of findings regarding the continuing contempt and imposing a $2,000 daily forfeiture for each day OSC remained in contempt. The order also

11

contained additional analysis regarding the denial of the motion to adjourn, which the court viewed as "baldly a tactic to stall the proceedings." To purge the contempt, the court required Gableman to submit evidentiary proof by way of affidavit establishing that he had complied with the mandamus order, including by describing the scope and process of his searches, his efforts to search for deleted or missing records, and any records that were being withheld based upon a clear statutory exemption to disclosure. OSC appeals that order.

¶28 The circuit court set the matter for a status hearing. Prior to the status hearing, OSC filed a motion for recusal. As grounds, the motion asserted the presiding judge had violated statutory impartiality requirements because he had exhibited subjective bias through objective criteria—though OSC conceded that such a claim was unsupported by existing law. The court denied the motion. OSC petitioned for leave to appeal that order, which we granted.

¶29 Meanwhile, the circuit court concluded a hearing was necessary to evaluate whether OSC's submissions following the June 10 hearing—which included an affidavit from Gableman—satisfied the purge conditions. OSC subsequently submitted a second affidavit from Gableman to demonstrate compliance, while simultaneously asserting that the purge conditions could not feasibly be met. OSC also filed a motion to terminate and vacate remedial sanctions imposed pursuant to the court's contempt order.

¶30 The circuit court took up all these matters at an August 16, 2022 hearing. The day after the hearing, the court entered an order finding that the case was effectively over and that OSC had purged its contempt as of the date of filing of Gableman's first affidavit. Though that affidavit had some shortcomings, the

court concluded that the second affidavit had remedied some of those deficiencies. The court found that the $2,000-per-day sanction was necessary to compel compliance with the Public Records Law, and it ordered $24,000 in sanctions for the twelve days that elapsed between the June 15, 2022 order and Gableman's June 28, 2022 affidavit.

¶31    Also on August 17, 2022, the circuit court entered a supplemental order denying OSC's motion to recuse.  The court stated its supplement had two purposes:  first, to more thoroughly address OSC's arguments; and second, to regulate the ethical and competent representation of out-of-state attorneys.  In the ninety-page supplement, the court addressed each instance of alleged bias asserted by OSC, concluding there was no basis for recusal under either Wisconsin statutes, constitutional due process, or the Code of Judicial Conduct.  Finding OSC's arguments throughout the litigation "baseless" and the conduct of its attorneys "personal[ly] insult[ing]," the court revoked the pro hac vice admissions of OSC's five out-of-state attorneys.  OSC appeals the revocations.

## DISCUSSION

¶32    OSC presents a litany of issues in connection with the contempt proceedings in these consolidated appeals.  Our resolution of some of the issues in favor of OSC makes it unnecessary to address others.  *See **Turner v. Taylor***, 2003 WI App 256, ¶1 n.1, 268 Wis. 2d 628, 673 N.W.2d 716.  We therefore structure this opinion as follows.

¶33    First, we reject OSC's assertions of procedural error leading up to the June 10, 2022 contempt hearing.  Specifically, we conclude the circuit court properly treated American Oversight's April 2022 motion as one for contempt.

13

We also conclude the court did not err in determining that American Oversight made a prima facie case for contempt. Thus, these procedural considerations do not provide a basis to reverse the court's contempt finding.

¶34 Second, however, we conclude the circuit court erroneously exercised its discretion when it refused to permit an adjournment of the June 10, 2022 hearing based on the non-appearance of the only noticed OSC witness. The court's cautionary statement at the hearing two days prior that Niemierowicz may need individual counsel due to a potential incarceration sanction appears to have prompted his non-appearance, and the court failed to consider that no reasonably competent attorney would have been able to adequately counsel the client and prepare for his testimony within a day of being retained.

¶35 Third, the denial of the adjournment request and the circuit court's subsequent contempt finding are inextricably linked. The lack of evidence provided by OSC during the June 10, 2022 hearing resulted in the finding of contempt. Because that lack of evidence was a direct result of the denial of the adjournment request, we conclude the contempt order must be reversed, as well as the sanction order.

¶36 Fourth, the reversal of those orders renders moot OSC's arguments regarding the denial of its recusal motion. No additional responsive records were produced following the contempt order. The circuit court's finding that OSC had satisfied the purge conditions obviates any possibility of a future contempt finding based upon the records requests at issue in this case.

¶37 Fifth, unlike the circuit court's denial of the recusal motion, the court's decision to revoke the pro hac vice admissions of OSC's out-of-state

14

attorneys is not moot. We therefore address that issue and conclude that the circuit court erred by failing to provide OSC's out-of-state counsel with notice of the revocations and an opportunity to respond. Accordingly, we reverse that portion of the order.

I.     *The circuit court did not commit procedural error in any of the ways OSC claims in the lead-up to the June 10, 2022 contempt hearing.*

¶38     OSC raises several issues that, it suggests, should have precluded the circuit court from ever reaching the issue of contempt to begin with. First, OSC argues the court erred by treating American Oversight's motion as one for contempt. Second, it argues the court erred when it concluded American Oversight had demonstrated a prima facie case for contempt. We reject both arguments.

¶39     OSC first maintains that American Oversight's motion was made under WIS. STAT. § 806.07 and the circuit court erred by treating it as a motion for contempt. To be sure, American Oversight invoked § 806.07(1)(h) in support of its motion. But American Oversight also explicitly invited the court to "consider whether contempt is appropriate," including an entire section in its briefing urging the court to grant additional relief, including punitive damages and contempt. In short, the record does not support OSC's argument.

¶40     Second, OSC argues the circuit court erred when it determined that American Oversight had established a prima facie case for contempt. Only after a party makes a prima facie showing of a violation of a court order does the burden shift to the alleged contemnor to demonstrate that their conduct was not

15

contemptuous. ***Noack v. Noack***, 149 Wis. 2d 567, 575, 439 N.W.2d 600 (Ct. App. 1989).

¶41    OSC acknowledges in a footnote to its appellate brief that it conceded to the circuit court that American Oversight's submission was sufficient to demonstrate a prima facie violation of the mandamus order. Having made that concession, OSC is foreclosed from raising the issue now on appeal. *See **State v. Caban***, 210 Wis. 2d 597, 604, 563 N.W.2d 501 (1997) ("The general rule is that issues not presented to the circuit court will not be considered for the first time on appeal.").

¶42    An additional aspect of this argument is OSC's assertion that it voluntarily disclosed all responsive documents, so American Oversight had no basis for requesting further relief. In addition to the forfeiture principle described above, OSC's argument in this respect is deficient because it puts the cart before the horse. At the time of American Oversight's motion, it was undisputed that OSC had untimely produced additional responsive documents that had not been previously disclosed.

¶43    The untimely disclosure of these additional responsive documents provided a basis upon which the circuit court could reasonably conclude that OSC had violated the mandamus order. First, OSC's admitted untimely disclosure raised the issue of whether the violation was intentional or inadvertent; OSC merely claimed it was the latter. Second, the untimely disclosure raised the issue of whether there were additional responsive documents that were being withheld; again, OSC merely claimed there were not.

¶44   The subsequent contempt proceedings revealed that OSC had disclosed all responsive documents, and through those proceedings the parties and the circuit court learned how the search for responsive records had been conducted.  This information was not available to the court at the time of the June 10, 2022 hearing or the June 15, 2022 contempt order.  The court was not required to accept at face value OSC's denials in light of OSC's admitted failure to disclose responsive documents.

*II.   The circuit court erroneously exercised its discretion when it denied OSC's request for an adjournment of the June 10 hearing based on the non-appearance of OSC's only noticed witness.*

¶45   OSC next argues the circuit court erred when it refused to grant an adjournment of the June 10, 2022 hearing based upon the non-appearance of OSC's only noticed witness.  The decision whether to grant an adjournment is left to the circuit court's discretion, and we will not reverse on appeal absent an erroneous exercise of discretion.  *State v. Leighton*, 2000 WI App 156, ¶27, 237 Wis. 2d 709, 616 N.W.2d 126.

¶46   We have described the erroneous exercise of discretion standard as a "limited right to be wrong."  *State v. Jeske*, 197 Wis. 2d 905, 913, 541 N.W.2d 225 (Ct. App. 1995) (citation omitted).  A circuit court is permitted to reach conclusions that another court or judge might not reach.  *Id.*  However, a proper exercise of discretion requires the court to apply the correct standard of law and use a demonstrated rational process to reach a conclusion that a reasonable judge could reach.  *Estate of Rille v. Physicians Ins. Co.*, 2007 WI 36, ¶39, 300 Wis. 2d 1, 728 N.W.2d 693.

17

¶47 With respect to a continuance request due to witness absence, a circuit court should consider several factors, including the materiality of the anticipated testimony, whether the moving party has been guilty of any neglect in endeavoring to procure the witness's attendance, and whether there is a reasonable expectation that the witness can be located. *Bowie v. State*, 85 Wis. 2d 549, 556-57, 271 N.W.2d 110 (1978).

¶48 To determine whether the circuit court properly exercised its discretion in a particular matter, we look first to the court's on-the-record explanation of the reasons for its decision. *Burkes v. Hales*, 165 Wis. 2d 585, 590, 478 N.W.2d 37 (Ct. App. 1991). Though a court's reasoning need not be lengthy, we must be satisfied that the court undertook a reasonable inquiry and examination of the facts. *Id.*

¶49 In denying the continuance, the circuit court here focused on what it perceived to be the untimeliness of OSC's adjournment motion, suggesting the motion should have been brought the previous evening when OSC's counsel learned Niemierowicz had retained counsel and would not be appearing.[6] The court added that, regardless of its comments, Niemierowicz should have been aware that jail confinement was a possible sanction for contempt.

---

[6] At the June 10 hearing, it was OSC's counsel that represented in argument that Niemierowicz had retained counsel on June 9. Neither American Oversight nor the circuit court questioned the veracity or accuracy of this representation; thus, neither do we. But even if Niemierowicz was still in search of adequate legal representation at the time of the June 10 hearing, it still would have been an erroneous exercise of discretion for the court to refuse to grant the adjournment. There was only a very short time between the conclusion of the June 8 hearing and the start of the June 10 hearing for Niemierowicz to secure adequate legal representation for this complex matter.

¶50    The parties—and to some extent, the circuit court—have spilled considerable ink discussing whether the court's comments that prompted Niemierowicz to seek counsel can be fairly characterized as a threat.  In our view, this dispute masks the real issue regarding the appropriateness of granting the adjournment request.

¶51    Rather than focus on the circuit court's intentions in alerting OSC and Niemierowicz to the possibility of a conflict of interest, we instead look to the effect those statements would have had on a reasonable witness.  Orienting the inquiry in this way permits us to analyze whether OSC's adjournment request was a reasonable one or whether it was, as the court believed, merely an attempt to stall the litigation.  Using this approach, we conclude a reasonable witness in Niemierowicz's position would have acted prudently in seeking personal counsel upon hearing the court identify a possible conflict of interest between the witness and the proponent of his testimony at the contempt hearing and the potential for incarceration.

¶52    Viewed through this lens, the circuit court gave insufficient consideration to the facts underlying OSC's adjournment request.  The June 8, 2022 hearing concluded at about 3:30 p.m.; the hearing at which Niemierowicz was to testify was scheduled for the morning of June 10.  This left Niemierowicz with just over a day to find an attorney, enter into a representation agreement, and provide the attorney with the relevant facts and documentation regarding the records production and contempt proceedings.  And from the standpoint of his attorney, there was far less time than that to become familiar with the proceedings and counsel the client in a meaningful way that would minimize Niemierowicz's exposure to personal consequences for his conduct while in OSC's employment.

19

Under these circumstances, no reasonably competent attorney would have permitted a client in Niemierowicz's position to voluntarily testify at the June 10 hearing.

¶53 The circuit court gave these facts no consideration. Instead, the court regarded OSC's adjournment request as untimely. Along the same lines, American Oversight suggests that OSC should have subpoenaed Niemierowicz to appear at the June 10 hearing. But according to OSC's counsel's representations, there was no indication prior to 6:00 p.m. on June 9 that Niemierowicz would not appear voluntarily. Under these circumstances, it is not apparent how a "timely" motion might have been made, nor does American Oversight elaborate upon the feasibility of subpoenaing a then non-cooperating witness for testimony at a hearing just hours away.

¶54 OSC argues that granting the continuance in this case would have tracked the general procedure endorsed by the court of appeals in *Noack*. In *Noack*, the contemnor, after having received notice of the hearing, was found in contempt *in absentia*. We observed that alleged contemnors "who can give reasoned explanation for their failure to comply with court orders will generally come to court and present a case. If they cannot come to court, they may arrange for a continuance …." *Noack*, 149 Wis. 2d at 572. We also explained that when an unexpected situation arises, alleged contemnors "should be allowed to show the court that they had no real opportunity to be heard" on the issue of contempt. *Id.* at 573. Notably, American Oversight does not discuss *Noack* or explain why OSC errs by relying upon it.

¶55    American Oversight responds that Niemierowicz was an immaterial witness because Gableman bore ultimate responsibility for OSC's response to the records requests. While that might be American Oversight's perception, the case rebutting American Oversight's motion for contempt was OSC's to make. Moreover, the appellate record supports a conclusion that Niemierowicz had some role—even if minimal—in producing responsive records. And ultimately, the circuit court purged the contempt not based on any revelations about Niemierowicz's efforts or lack thereof, but because Gableman had conducted independent searches for records to purge the contempt. It is difficult to discern how things might have played out if Niemierowicz had been available to testify at the June 10 hearing.[7]

> ### III.    *The contempt order and sanctions against OSC resulting from the lack of evidence at the June 10 hearing must be reversed.*

¶56    The circuit court's decision to deny the adjournment request directly resulted in the contempt finding and the sanctions ultimately imposed. OSC was hamstrung in its ability to present evidence at the June 10 hearing rebutting American Oversight's contempt case. Naturally, with the defense unable to present the necessary evidence to establish that the violation of the mandamus order was inadvertent or unintentional, the court viewed OSC's conduct as sanctionable.

¶57    OSC should have been given more time to produce Niemierowicz's testimony. Because it was deprived of the opportunity to rebut American

---

[7] Niemierowicz apparently left employment with OSC shortly after the contempt hearing.

Oversight's prima facie case, the contempt finding and subsequent sanctions order also rest on faulty ground. We therefore reverse the June 15, 2022 order finding OSC in contempt and that portion of the August 17, 2022 order awarding contempt sanctions.

¶58 We do not, however, remand for further proceedings on the contempt issue, as such proceedings would be pointless. The circuit court's August 17 order determined that OSC holds no more responsive records. No new responsive records were disclosed as a result of the contempt proceedings, and American Oversight has been in possession of all responsive records since early-April 2022. Remanding this matter would consume scarce judicial resources with no practical benefit to American Oversight or to the public.

> IV.  *The issue of whether the circuit court properly denied OSC's motion for recusal is moot.*

¶59 OSC also argues the circuit court erred by denying its recusal motion. Having concluded that the contempt and sanctions orders must be reversed, and with no possibility of future contempt proceedings, this issue is moot. *See **PRN Assocs. LLC v. DOA***, 2009 WI 53, ¶29, 317 Wis. 2d 656, 766 N.W.2d 559. In particular, this court would be required to weigh in on OSC's novel legal theory, which is a purely academic exercise at this juncture. *See **id.***

> V.  *The circuit court's revocation of the pro hac vice admission of OSC's out-of-state attorneys is not a moot issue and violated constitutional due process.*

¶60 OSC's final argument is that the circuit court erred by revoking the pro hac vice admission of its five out-of-state attorneys. A court may rescind permission for out-of-state counsel to appear before it "if the lawyer by his or her

conduct manifests incompetency to represent a client in a Wisconsin court or unwillingness to abide by the rules of professional conduct for attorneys or the rules of decorum of the court." SCR 10.03(4)(e) (2024). The decision to revoke an attorney's pro hac vice admission under this provision is reviewed for an erroneous exercise of discretion. *Filppula-McArthur ex rel. Angus v. Halloin*, 2001 WI 8, ¶31, 241 Wis. 2d 110, 622 N.W.2d 436.

¶61    Although the circuit court proceedings are at an end, the pro hac vice revocations of OSC's out-of-state counsel are not moot. "On its face SCR 10.03(4) allows a circuit court to consider an attorney's performance in the courts of this state when deciding whether to revoke pro hac vice admission." *Filppula-McArthur*, 241 Wis. 2d 110, ¶46. Assessing the propriety of the revocations is not an academic exercise. The revocations may negatively impact the ability of OSC's out-of-state counsel to practice in Wisconsin courts, and we must address their validity. Additionally, we have granted pro hac vice admissions to OSC's out-of-state counsel in this court for purposes of these appeals.

¶62    Under SCR 10.03(4), attorneys admitted pro hac vice "must be provided some form of notice and an opportunity to respond before pro hac vice status may be withdrawn". *Jensen v. Wisconsin Patients Comp. Fund*, 2001 WI 9, ¶20, 241 Wis. 2d 142, 621 N.W.2d 902. This rule is not one of constitutional dimension, but of sound judicial policy. *Id.*, ¶16. The requirement "ensures that the attorney's reputation and livelihood are not unnecessarily damaged, protects the client's interest, and promotes more of an appearance of regularity in the court's processes." *Id.*, ¶17 (citing *Johnson v. Trueblood*, 629 F.2d 302, 303 (3rd Cir. 1980) (per curiam)).

¶63    Though the form of the notice and opportunity to respond is left to the circuit court's discretion, those procedural protections must occur.  Here, they did not.  The pro hac vice admissions of OSC's out-of-state counsel were never mentioned at the August 16, 2022 hearing, nor were they mentioned in the court's earlier five-page order denying the motion to recuse.[8]  On August 17, 2022, when supplementing the order denying the recusal motion, the court ordered that the pro hac vice admissions were "immediately withdrawn."

¶64    Because OSC's out-of-state counsel was deprived of necessary procedural protections relating to their pro hac vice admissions under Wisconsin law, we reverse that portion of the circuit court's August 17, 2022 order revoking those admissions.

*By the Court.*—Orders reversed; appeal dismissed.

This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[8] The motion to recuse was the focus of the circuit court's finding that OSC's out-of-state counsel had engaged in sanctionable conduct.